IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

No. 24-810 T
(Judge David A. Tapp)

APRIL HARRY N. QUINONES and
JANETH R. QUINONES,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

**THE UNITED STATES' PRETRIAL MEMORANDUM**

_____

Defendant respectfully submits its pretrial memorandum pursuant to the Court's

November 15, 2024, Order and Paragraph 14 of Appendix A to the Rules of the United States

Court of Federal Claims.  The sole issue for the Court to resolve during the trial is whether

plaintiffs' 2021 refund claim is based in any way on fraud.  Under 28 U.S.C. § 2514, if the Court

finds any such fraud, plaintiffs' entire refund claim must be dismissed.  Defendant will show that

plaintiffs made numerous fraudulent representations in their 2021 tax return and their complaint

in this Court, including the amounts of wage income, federal income tax withholding, itemized

deductions, and business losses.  Plaintiffs made these fraudulent statements knowing they were

false and intending to deceive the government into granting them an unwarranted refund.

Plaintiffs, therefore, have forfeited their claim pursuant to 28 U.S.C. § 2514.

I.      **Statement of Facts**

Plaintiffs April Harry and Janeth Quinones are a married couple who, in 2021, lived in

Florida with their minor daughter.  Ms. Quinones was employed as a software developer for

1

Vistra Corp., a Fortune 500 company.  Mr. Quinones was a self-employed entrepreneur who was the sole-owner and employee of a company called Fur Systems LLC.  Both earned bachelor's degrees in computer science and master's degrees in information technology from University of the Immaculate Conception in the Philippines.

Plaintiffs filed their joint 2021 Form 1040, U.S. Individual Income Tax Return, on October 16, 2022, after receiving a six-month filing extension.  They used an online tax preparation software program to prepare their taxes.  Both plaintiffs electronically signed the return under penalty of perjury.

Plaintiffs' 2021 tax return claimed an exceptionally high refund amount: $4,547,247. They arrived at that figure by reporting similarly large and over-inflated figures throughout their tax return, including their wage income, federal income tax withholdings, itemized deductions, and business losses, among other items.  Examples are discussed below:

- Wage Income – On line 1 of their joint tax return, plaintiffs reported receiving total wage income in 2021 of $14,433,860.  They supported that figure by attaching what they represented to be Forms W-2, Wage and Tax Statements, issued by their employers Vistra Corp. and Fur Systems.  The Form W-2 allegedly issued by Vistra Corp. showed that Ms. Quinones earned $9,471,261 of wages in 2021 for her work as a software developer.  The Form W-2 allegedly issued by Fur Systems LLC showed that Mr. Quinones earned $4,962,599 of wages in 2021 from his small business.

- Tax Withholdings – On line 25(a), plaintiffs reported total income tax withholdings from those wages of $2,194,241.  They reached that figure by adding together the withholdings allegedly reported by their employers on the Forms W-2 they submitted from Vistra Corp ($1,427,408) and Fur Systems ($766,832).

- <u>Deductions</u> – On their Schedule A, Itemized Deductions, plaintiffs reported total itemized deductions of $7,479,100, which was based almost entirely on reporting a medical and dental expense deduction for the 2021 tax year of $7,446,592.

- <u>Business Losses</u> – The couple used Schedules C, Profit or Loss From Business, to report substantial losses from six different businesses: (1) Mr. Quinones' real estate rental business, consisting of renting his home office to Fur Systems LLC, his other wholly-owned business ($37,695 loss); (2) Mr. Quinones' business management business, consisting of providing management services to Fur Systems, LLC, his other wholly-owned business ($14,267,236 loss); (3) plaintiffs' joint business managing the "personal estates" of Mr. and Ms. Quinones ($793,586 loss); (4) Ms. Quinones' software development business, consisting of working for wages as an employee for Vistra Corp. as a software developer ($19,904,030 loss); (5) plaintiffs' joint business trading financial instruments ($2,878,706 loss); and (6) plaintiffs' joint business trading financial instruments on their daughter's behalf ($97,209 loss).

Despite reporting over $14 million in wage income, plaintiffs ended up reporting $0 of taxable income, mainly due to their large itemized deductions and "business" losses. After accounting for various additional taxes and alleged credits, plaintiffs calculated that they were owed a total refund of $4,547,247, which vastly exceeds the amount of tax allegedly withheld during 2021 ($2,194,241). Relying on plaintiffs' self-assessment, the IRS recorded tax withholdings of $2,194,242 on plaintiffs' 2021 account transcript. On May 20, 2024, plaintiffs filed the complaint in this case seeking to force defendant to pay their requested $4,547,247 tax refund "as stated in their Form 1040," plus interest. To date, the IRS has not paid plaintiffs their requested refund.

If the figures plaintiffs reported on their tax return and in their complaint seem improbably large, that is because they are.  In reality, Ms. Quinones received a Form W-2 from Vistra Corp. showing $175,393.72 of wages and $26,433.49 of federal income tax withheld. These actual amounts pale in comparison to the almost $9.5 million in wages and $1.5 million in tax withholdings reflected on the Form W-2 the couple filed with their tax return and reported on their Form 1040.  Likewise, Mr. Quinones's "small business" Fur Systems LLC issued him a Form W-2 showing $91,899.98 of wages and $14,200.60 of federal income tax withheld.  In contrast, the Form W-2 that plaintiffs attached to their 2021 tax return showed Mr. Quinones earning wage income of almost $5 million and income tax withholdings of over $750,000.

Their improbably large medical and dental expenses also do not exist.  Plaintiffs' own records show that they actually paid less than $6,000 in out-of-pocket medical and dental expenses, not the almost $8 million they reported on their tax return.

None of the six "businesses" reported on Schedules C is real.  The business "Management of Personal Estates" attempts to classify the Quinones' personal living expenses— including, for example, expenses for groceries, cosmetics, ornamental plants, pet toys, and the cost of entertaining friends—as business expenses, which is precluded by the Internal Revenue Code.  These personal living expenses were then multiplied by large numbers—even though there is no basis to do so—to generate a "business loss" of almost $800,000, which they then used to reduce their taxable income.  Among other issues, the business "Rental of Home Office" similarly classifies personal living expenses—including Homeowners Association fees, home renovation expenses, and wardrobe expenses—as business expenses.

"Management of Company – Fur Systems LLC" and "Software Developer – Vistra Corp Services," duplicate plaintiffs' already reported wage income, but in an even more inflated form,

and then report *even larger* corresponding "business expenses," including the expense of having to pay Social Security and Medicare taxes on their wage income (again with a large and unwarranted multiplier). And the remaining two businesses report income and expenses related to trading financial instruments and "commodities" by plaintiffs and their minor daughter, including expenses for clothing, gifts, and meals and snacks on their daughter's Schedule C.

Virtually every number on plaintiffs' tax return is false. The numbers on the return have some relationship to reality—they are often based on numbers derived from detailed records maintained by Mr. Quinones and supplied to defendant during discovery—but the numbers from those records are then multiplied by large (and different) multipliers, sometimes as high as 162.

Plaintiffs now freely admit to this scheme. But plaintiffs never included any explanation about how they calculated the amounts that they reported on their 2021 tax return or in their complaint with the Court. There is no indication on the face of their tax return that plaintiffs used these various multipliers or included these obviously personal expenses. Indeed, plaintiffs did not begin to explain any of the "theories" they used on their 2021 tax return until November 2022 when they responded to a letter sent by the IRS asking plaintiffs to provide information about how they calculated $4,393,607 of "other payments or refundable credits" on their Schedule 3, line 13z.[1] There, Mr. Quinones explained how he multiplied the amount of tax "withheld at source" by 54 to account for "intangibles" and "notes" that "attached" to the amounts withheld. But he did not explain that their return applied similar multipliers to the amounts of wage income, itemized deductions, and business expenses, or that their Schedules C

---

[1] This is another application of plaintiffs' outlandish "theory" that defendant discussed in detail at ECF 7, pages 8–11.

reported personal expenses as business expenses.  (There is no basis in the Internal Revenue Code for any of these multipliers.)

Then, in February 2023, Mr. Quinones responded to a letter sent by the IRS asking plaintiffs to "send supporting documentation" about wages earned, gross income received, and federal tax withheld for 2021.  In his response, Mr. Quinones explained how he multiplied the amounts of his and his wife's wages, total gross receipts from Schedules C, and tax withheld from his and his wife's wages by 54 to calculate the amounts reported on their return.  He also, for the first time, shared with the IRS the accurate Forms W-2 that plaintiffs received from Fur Systems LLC and Vistra Corp. for 2021.

Similarly, plaintiffs also failed to explain any of their theories in their complaint in this Court.  Instead, plaintiffs made statements including that their 2021 return "shows a total of $14,433,860 as W2-Income, and a total of $2,194,241 for taxes withheld from W2-Income" without explaining how they calculated the amounts "shown," which are not equal to the actual amounts earned and withheld.  Plaintiffs also represented that they "believe that they have paid a total of $6,593,249" through taxes withheld from their wages, payments made with their daughter's filing, additional taxes paid in 2020, and refundable credits under I.R.C. § 31 without explaining that their "belief" requires multiplying the amounts they actually paid by 54.

## II.    Contentions of Law

The Court of Federal Claims is a court of limited jurisdiction.  *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed. Cir. 2006) (citing *United States v. King*, 395 U.S. 1, 3 (1969)). The Court's ability to hear claims and grant relief depends on the extent to which the United States has waived its sovereign immunity.  *King*, 395 U.S. at 4.

Congress did not waive the United States' sovereign immunity over cases in which the plaintiff is attempting to defraud the United States in pursuit of its claim. *DeRochemont v. United States*, 23 Cl. Ct. 87, 89 (1991) (citing *Kamen Soap Products v. United States*, 129 Ct. Cl. 619, 641 (1954)). This restriction is found in 28 U.S.C. § 2514, and its application in appropriate cases is mandatory. *Id.* at 90. "Once fraud is established, '[t]he use of the word "shall" [in § 2514] makes the judgment of forfeiture obligatory on the court; the court has no discretion to turn a blind eye to an attempt, whether successful or not, to commit fraud in the statement of a claim against the United States.'" *Oasis Int'l Waters, Inc. v. United States*, 134 Fed. Cl. 405, 429 (2016) (quoting *Am. Heritage Bancorp v. United States*, 61 Fed. Cl. 376, 385 (2004)).

Sometimes called the Forfeiture of Fraudulent Claims statute, 28 U.S.C. § 2514 provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

> In such cases the United States Court of Federal Claims shall specifically find such fraud or attempt and render judgment of forfeiture.

Fraud in even one aspect of a tax refund claim is fatal to the plaintiffs' entire case. *DeRochemont*, 23 Cl. Ct. at 90; *see also Daewoo Eng'g & Constr. Co. v. United States*, 557 F.3d 1332, 1341 (Fed. Cir. 2009) ("[F]orfeiture under 28 U.S.C. § 2514 requires only part of the claim to be fraudulent."). For example, in *DeRochemont*, the Court found that the plaintiff had forfeited his entire $8,960.38 refund claim for the 1979 tax year even assuming *arguendo* that the plaintiff would have otherwise been entitled to a $1,278.76 portion of the requested refund. 23 Cl. Ct. at 90. The Court explained that the plaintiff "has filed a claim—the pending complaint—for a tax refund relative to tax year 1979, and he has attempted to practice fraud in the statement of that claim. . . . [T]he entire complaint is tainted by fraud," and no partial recovery is possible. *Id.*

To establish forfeiture under 28 U.S.C. § 2514, the government must prove that plaintiffs "(1) knew the claim was false and (2) intended to deceive the government by submitting it." *Young-Montenay, Inc. v. United States*, 15 F.3d 1040, 1042 (Fed. Cir. 1994) (citation omitted). The fraud must be shown by "clear and convincing evidence." *Daewoo Eng'g & Const. Co.*, 557 F.3d at 1341 (quoting *Com. Contractors, Inc. v. United States*, 154 F.3d 1357, 1362 (Fed. Cir. 1998)). Clear and convincing evidence of fraud is found when the allegations in plaintiffs' administrative claim for refund and their complaint are placed alongside established fact. *See DeRochemont*, 23 Cl. Ct. at 89 (comparing admissions at trial with representations made in administrative refund claim and court complaint); *Farkas v. United States*, 57 Fed. Cl. 134, 146 (2003), *aff'd*, 95 F. App'x 355 (Fed. Cir. 2004) (same). Innocent mistakes, reasonable inconsistencies, and exploration of legal gray areas "do not rise to the level of fraud." *Lodge Constr., Inc. v. United States*, 158 Fed. Cl. 23, 53 (2022). But misrepresentations that attempt "to mislead the court to further [a] quest to avoid paying taxes" do. *Heger v. United States*, 112 Fed. Cl. 224, 229 (2013).

Reporting false numbers on a tax return, with no indication on the face of the return that the numbers are false, is fraud. *See id.* (declining to "delve into Mr. Heger's motivation" for arguing his income was not subject to tax because plaintiff also made the demonstrably false statement that he had no income at all). Virtually every number that plaintiffs reported on their 2021 Form 1040 under penalty of perjury was false, including the amount of wages, tax withheld from wages, total income, total payments, business loss, medical and dental expenses, and Schedule C income and expenses. Educated professionals do not file tax returns with amounts 54 or 162 times greater than the actual amounts because of an "innocent mistake" or "reasonable inconsistency." Plaintiffs' calculation methods do not involve exploration of legal gray areas, as

8

they require multiple absurd interpretations of the law, which have evolved over time and gotten more brazen. Plaintiffs justify their legal "theories" by pointing to I.R.C. §§ 1001 and 1060, but they cannot coherently explain how the text of either provision could logically lead someone to believe in good faith that the law permits them to multiply numbers in their tax return by 6 or 54 or 162. Once again, the Internal Revenue Code does not permit multiplication of these amounts.

After years of filing "normal" tax returns, it would simply not be credible for plaintiffs to maintain that they believed they prepared their 2021 tax return correctly. Plaintiffs' failure to indicate anywhere on their return or in their complaint with this Court that amounts they reported depended on absurd "calculations" was intentionally deceptive and designed to further their quest to receive an undeserved "refund."

Plaintiffs may argue at trial that they were not trying to deceive the IRS because they explained aspects of their "tax theories" to the IRS in relation to different, prior tax years. That does not change the fact that they did not attach a similar explanation to their 2021 tax return, which makes that return deceptive. Moreover, plaintiffs' method in prior tax years is irrelevant here because, as a matter of law, each tax year stands alone. *United States v. Consol. Edison Co. of New York*, 366 U.S. 380, 384 (1961) ("each 'taxable year' must be treated as a separate unit") (citations omitted). Each tax return must be complete and accurate as submitted.

Even if plaintiffs could argue that it is relevant that they believed the IRS was aware of their calculation method from prior tax years, plaintiffs have not used consistent methods from year to year. Therefore, they could not plausibly believe that the IRS knew about the tax "theories" they were applying on their 2021 tax return. Plaintiffs began preparing their own tax returns, instead of hiring a return preparer, for their 2018 tax year. They filed an amended return for 2018 that reported income and withholding with "intangibles," and they included a

spreadsheet with that filing showing how they calculated the amount of "intangibles." But the multiplier they used that year was *six*. Since then, plaintiffs' multipliers have gotten progressively larger—the most common multiplier used on their 2021 tax return was 54. They did not tell the IRS that.

In addition, plaintiffs may argue that the IRS lead them to believe that it agreed with their "theories" because the IRS partially paid them their requested refund in 2020. First, defendant has counterclaimed to recover that partial refund as an erroneous refund induced by similar fraudulent misrepresentations. Second, the IRS has only ever paid them *part* of their 2020 refund claim. Plaintiffs cannot plausibly allege that they believed the IRS understood and agreed with all their (evolving) theories.

Plaintiffs' intentional misrepresentations in their administrative claim for refund and this refund suit rise to the level of fraud. The amounts of wage income, federal income tax withholdings, itemized deductions, business losses, and other items they reported were false, as confirmed by plaintiffs' own records. By reporting these false amounts, plaintiffs intended to deceive the government and this Court with the aim of receiving a refund that they were not entitled to receive. Under 28 U.S.C. § 2514, plaintiffs' 2021 refund claim must be forfeited.

Respectfully submitted,

February 28, 2025     */s/ Elizabeth B. Villarreal*
          ELIZABETH B. VILLARREAL
          Attorney of Record
          MELISSA A. HAMMER
          Trial Attorney
          U.S. Department of Justice
          Tax Division
          Court of Federal Claims Section
          Post Office Box 26
          Ben Franklin Station

Washington, D.C. 20044
Tel: 202-353-0553
Fax: 202-514-9440
Elizabeth.Villarreal@usdoj.gov

*/s/ Christopher J. Williamson*
CHRISTOPHER J. WILLIAMSON
Assistant Chief
Of Counsel

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify that service of the foregoing, has this 28th day of February 2025, been made on

plaintiffs, pro se, by mailing the original thereof, in a postage prepaid envelope, to the following

address:

April Harry and Janeth Quinones
18209 SW 3rd Street
Pembroke Pines, FL 33029

Elizabeth B. Villanuel

U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
202-307-6440

12