# In the United States Court of Federal Claims

| | |
|---|---|
| April Harry N. Quinones <br> Janeth R. Quinones <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **THE UNITED STATES** <br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **Case No. 24-810 T** <br><br> **Judge David A. Tapp** |

**PLAINTIFFS' PRE-TRIAL MEMORANDUM**

Pursuant to the Court Order issued on November 15, 2024, the Plaintiffs, appearing as pro se, submit their Pre-Trial Memorandum.

### 1. Statement of Facts

a. The Plaintiffs are both bona fide citizens of the United States of America, residing at Pembroke Pines, Florida, and are married to each other with one daughter (E.C.F. 15-2).

b. Both Plaintiffs have a bachelor's degree in computer engineering and a master's degree in information technology. They acquired both degree from the University of the Immaculate Conception in the Philippines (E.C.F. 32-1).

c. Mrs. Quinones is currently employed as a Software Developer in Vistra Corporation, a Fortune 500 company. Mr. Quinones is employed as a Technical Operations Manager and the Sole Owner of his company Fur Systems LLC. Fur Systems LLC was formed by Mr. Quinones in 2016 and elected to be treated as a C-Corporation for taxation purposes in 2017. A C-Corporation LLC is treated as an

1

      entity separate from its owner.

d. Before moving to the United States in 2011, the Plaintiffs had worked in various IT fields in the Philippines. Mrs. Quinones initially worked as an IT System Administrator and managed to move to Software Development later in her career. Mr. Quinones also worked as a Software Developer and later moved to IT Security and Compliance and IT Management. In their entire career, both developed various applications like Payroll, Inventory, and Point-of-Sale Systems. Later in their career, both were involved in ERP projects like Oracle and SAP implementation in which they learned about financial systems.

e. The late father of Mr. Quinones used to be an entrepreneur in the Philippines employing approximately 50 employees at its peak. Mr. Quinones learned a lot from his father's business, including how to start and grow a business, and how he was able to employ people by just earning a couple of pesos per case of soft drinks sold.

f. In September 2019, the Plaintiffs filed Form 1040X to amend their Joint 2018 ITR (E.C.F. 15-1). They elected to include the *value of the goodwill* and *going-concern-value attached to their property*, and the *value of goodwill attached to their trade* pursuant to IRC §1001(b) and §1060(b). Attachment of these intangibles is recognized by the law under C.F.R. §1.1060-1(2)(B). See also CFR § 1.197-2(e)(1). This increases their income and expenses by six (6) times resulting in a refund of an additional $125,925 in addition to the $ 26,585 refunded from the original return. This claim is currently pending for Internal Revenue Service ("IRS") assessment since April 2020 and no additional refund has been issued yet.

g. On October 15, 2021, before the expiration of their automatic filing extension, the Plaintiffs filed their Joint 2020 Income Tax Return ("ITR"). They claimed W2 income of $3,659,528, business loss of -$22,273,403, standard deduction of $4,688,745, other taxes applied of $40,729, withholding tax payments of $ 470,902, a recovery rebate credit of $3,250, and additional credits of $470,902. These sum up to $ 945,054. After deducting the total tax of $40,729, it resulted in a $904,325 refund. The amounts were assessed to include the intangibles and notes pursuant to IRC §1001(b) and §1060(b) increasing the income and expenses by eighteen (18) times.

h. On December 6, 2021, after the IRS reviewed the Income, Expenses and Withholding taxes amount in the Joint 2020 ITR, they issued a notice stating that they adjusted the Plaintiffs' ITR. The notice stated that the IRS calculated the same amount of Income Tax Withheld of $470,902 but reduced the Recovery Rebate Credit to $1,800 and disallowed the additional claimed credits of $ 470,902. This reduces the Plaintiffs' refund to $431,973. On March 30, 2022, a refund was issued to the Plaintiffs in the amount of $444,323.86 ($431,973 plus $12,350.86 interest) (See Exhibit G-2). The Plaintiffs replied to dispute the changes explaining the related legal authorities of their claimed credits. However, on May 13, 2024, the IRS issued a letter stating that they reviewed their calculations and confirmed that they are correct in refunding only $444,323.86 (E.C.F. 37-1).

i. In 2021, the Plaintiffs received monetary income with the face value of $91,899.98 (for Mr. Quinones wages from Fur Systems LLC) and $ 175,393.72 (for Mrs.

Quinones wages from Vistra Corp.). They also made monetary withholding tax payments with a face value of $ 14,200.60 (for Mr. Quinones withheld by Fur Systems LLC) and $ 26,433.49 (for Mrs. Quinones withheld by Vistra Corp.).

j.  On October 15, 2022, before the expiration of their automatic filing extension, the Plaintiffs filed their Joint 2021 ITR via TaxAct.com. They assessed their income and expenses to include the intangibles and notes or records attached to the money paid when the monies are exchanged or traded (i.e. as wage payments, as withholding tax payments). Pursuant to IRC §1001(b), the Plaintiffs included in their assessment the *value of the property*, *value of the goodwill attached to the property*, and the *value of going-concern-value attached to the property*. In addition to that, whenever a property is traded or exchanged, the Plaintiffs included the *value of the goodwill of trade*, the *value of the going-concern-value of the trade*, the *value of the record holding the cost of the trade*, the *value of the record holding the value of the trade*, and the *value of the record holding the inventory of items included in the trade*. IRC §1012 states that "*The basis of property shall be the cost of such property…*". Thus, the intangible properties and notes or records were valued by the Plaintiffs on a cost basis. This increased their income and expenses by fifty-four (54) times when trading and by twenty-seven (27) times when properties are used or consumed.

k.  The Plaintiffs have been using Intuit Quickbooks Accounting System since 2018 in recording their transactions and used the same assessment methodology when booking transactions. IRC §446 states that "*Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly*

*computes his income in keeping his books.*".

l. Using the Plaintiffs' assessment methodology, they claimed in their Joint 2021 ITR a wage income of $ 4,962,598.92 (for Mr. Quinones wages from Fur Systems LLC) and $ 9,471,260.88 (for Mrs. Quinones wages from Vistra Corp.). They also claimed withholding tax payments of $ 766,832.40 (for Mr. Quinones withheld by Fur Systems LLC) and $ 1,427,408.46 (for Mrs. Quinones withheld by Vistra Corp.).

m. Moreover, the Plaintiffs filed their employment income and expenses using the Form 1040 Schedule C as they treated these as business activities. "*An activity qualifies as a business if your primary purpose for engaging in the activity is for income or profit and you are involved in the activity with continuity and regularity.*" (IRS Publication 2021 Instructions for Schedule C). The law recognizes "*(B) the trade or business of performing services as an employee.*" under IRC §199A. Although it was excluded under the definition of a "Qualified trade or business" under §199A, it was not excluded under other parts of the code particularly section §162. It also means that the activities performed as an employee are indeed considered by the law as trade or business activities. Thus, it can be reported under Schedule C. Furthermore, the Plaintiffs reported the same W2 wages in Form 1040 line 1 to comply with the requirements of the form.

n. In the Plaintiffs Schedule C forms for employment activities, they included income not only the money received as wages but also their income other than the money received. The Plaintiffs realized that aside from the hours they gave to their employer while working for them, they also traded other properties such as their

5

*workforce-in-place*, *human resources* and *intellectual property (or Know-How)*. Also included in their income are the bonuses and other benefits including the employers' contribution paid for their Social Security, Medicare and other insurance benefits. Moreover, they added the value of the contracts as income when they purchased it from each provider. (*See Exhibit G-1, tables 2-a, 2-b, 3-a and 3-b for breakdown of amount)*.

o.  The Plaintiffs also attached two Schedule C forms: one for their daughter's trading activities and one for their joint personal estates. They believe that these are necessary to comply with the income reporting requirements of the IRC. CFR §1.61 defines gross income as "*Gross income means all income from whatever source derived, unless excluded by law. Gross income includes income realized in any form, whether in money, property, or services.*". <u>*See also IRS Publication 2021 Instruction Form 1040*</u>. CFR §1.61 requires taxpayers to declare as income not only the money that they receive but also the property or services. This means that a taxpayer receives a taxable income whenever he/she purchases a property or pays somebody for their services. For this reason, the Plaintiffs filed these 2 Schedule C forms to comply with the requirement. The Plaintiffs have declared all income related to their purchases. This means that all their properties, including their personal properties, are now treated as properties held for investment. They are "properties held for investment" because they are used in producing taxable income; and operate with continuity and regularity (*See IRS 2021 Publication 946 page 5 for Property Used in Your Business or Income Producing Activity*). Thus, all related income and expenses of these properties are reportable as investment

    or business income and expenses in the ITR.

p.   In addition, the Plaintiffs attached 2 Schedule Cs for their activities in renting their Home Office and in trading of securities. The Home Office rental business includes activities from renting their Home-Office to Fur Systems LLC. The trading of securities includes all activities related to the Plaintiffs' personal investment account, investment to Fur Systems LLC and 401K.

q.   In 2021, the Plaintiffs realized income related to their medical transactions in total of $ 226,023.41. These are in various forms including *the value of the medical services received*, *the value of the workforce-in-place received during treatment*, *the value of the medical provider's intellectual property or know-how*, *the value of the medications received*, *the value of the discounts from medical providers*, *the value of the medical insurance contracts received* and the *insurance claims*. At the same year, they incurred expenses as cost of sales for the value of the property they traded to generate the taxable income. Also, they incurred expenses when these medical services, medications and insurance contracts are used or consumed throughout the taxable year. These summed up to $ 226,023.41 – Cost of Sales and $ 147,529.35 – Operating Expenses. All medical expenses plus the intangibles and notes attached to the properties, are assessed to be $ 16,188,556.59 (*See Exhibit G-1, tables 1-a and 1-b*). The Plaintiffs only claimed $ 7,966,584 as medical and dental expenses deduction in Form 1040 Schedule A Line 1 (*See Exhibit G-1, tables 1-c*).

r.   The Plaintiffs 2021 Joint ITR resulted in zero taxable income. However, due to the Alternative minimum tax (AMT) and other additional taxes, the Plaintiffs paid $

    2,046,002 in additional taxes. Deducting the additional taxes to the assessed withholding tax payments of $ 2,194,242, it shows a refund of $ 148,240.

s. In addition to the $ 148,240 tax refund, the Plaintiffs have added $ 5,400 credits for the payment made with the request for filing her daughter's ITR extension, $ 766,832.40 – Mr. Quinones tax withheld at source credit (section §31), $ 1,427,408.46 – Mrs. Quinones tax withheld at source credit (section §31), and $ 2,199,366 – additional taxes paid during the filing of 2020 ITR in the taxable year 2021. All amounts were assessed using the same assessment methodology. These increase the total refundable amount to $ 4,547,246.86.

t. On February 13, 2023, the IRS issued a notice stating that they have changed the Plaintiffs' tax calculations. In their notice (E.C.F. 1-2), it shows that the IRS calculated the same amount of $ 6,933,226 as adjusted gross income (Form 1040 line 11), $ 0 taxable income (Form 1040 line 15) and $ 2,021,017 total tax (Form 1040 line 24). The IRS also calculated the same amount of $ 2,194,242 for Income tax withheld (Form 1040 - line 25d) but deducted $ 24,985 for the IRA Excise Taxes payment. However, they have denied all the additional credits claimed by the Plaintiffs in the amount of $ 4,399,007. The Plaintiffs and the IRS both computed a total of $ 148,240 tax refund but did not agree with the additional credits claimed. The IRS notice (E.C.F. 1-2) shows $ 149,770.72 of tax refund calculated with interest. This refund has not been issued to the Plaintiffs to date.

## 2. Plaintiffs' Position

a. The Plaintiffs showed evidences that the IRS concurred with the Plaintiffs'

assessment methodology and calculations: (1) when they issued the Notice CP12 (for 2020 ITR) on December 6, 2021 showing that their calculations for Adjusted gross income and Income Tax Withheld are the same with the Plaintiffs' calculations (*See Exhibit G-2*), (2) when they responded to the Plaintiffs' argument stating that their calculations in the Notice CP12 for 2020 ITR was correct (E.C.F. 37-1), and (3) when they issued the Notice CP24 (for 2021 ITR) on February 13, 2023 showing that their calculations for Adjusted gross income and Income Tax Withheld are the same with the Plaintiffs' calculations (E.C.F. 1-2). Both 2020 and 2021 ITR were assessed to include the intangibles and notes, and the IRS agreed to it. The Plaintiffs believe that it is unlikely for the IRS not to see the huge differences in the actual values versus the assessed values when they made their calculations. Therefore, it is their intent to accept the Plaintiffs calculations because they know that the Plaintiffs are doing their assessment pursuant to IRC §1001(b) and §1060(b).

### 3. Statement of the issues of fact and law

The Defendant alleges that the Plaintiffs' intent in filing their Joint 2021 ITR is to deceive the IRS, and that the IRS was deceived when it made calculations in the issued notices. Thus, the Defendant claimed that the Plaintiffs' claims be forfeited due to fraud.

### 4. Plaintiffs' Legal Position

a. The Plaintiffs are just following the will of the law

The IRC §7206(1) states that "*Any person who – Willfully makes and subscribes any return, statement, or other document, … which he does not believe to be true and*

*correct as to every material matter --- shall be guilty of felony …*". To be guilty under IRC §7206(1), the act should be "*Willful*", and that the person made a statement that "*he does not believe to be true*". The Plaintiffs' act did not fall in both aspects. They believed and proven that their statements are "true and correct" according to the "will of the law". Both Plaintiffs are educated and prudent people. A prudent person would not believe that an entity like the IRS could be deceived by submitting an ITR with a huge difference between the face value versus the assessed tax withheld payments. Thus, it is not their intention to deceive the IRS but to follow the law particularly the IRC §1001(b) and §1060(b). Evidence showed that they have followed the law to the best of their knowledge and abilities.

b. The allegations made are based on hearsay.

The Plaintiffs have shown direct evidence that (aside from the disputed claims) the IRS reviewed and came up with the same results with the Plaintiffs' computations (*Exhibit G-2, E.C.F. 37-1, E.C.F. 1-2)*. There is no declaration from the IRS that they were deceived on how the Plaintiffs assessed and reported their income and expenses, nor have they declared that they made an error in their computations shown in the issued notices. Rule 801 of the Fed. Rule of Evidence defines a Hearsay as a statement that: "*(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.*". The Defendant's fraud allegations have no statutory basis, and no evidence has been provided that the declarant (*the Secretary of Treasury or designee*) made such statements. Thus, the Defendants' fraud allegations should not be admitted, as hearsay is not admissible (*Fed. Rul of Evid Rule 802*); and due to the lack

of evidence on the forfeiture claims, it should be denied by this court for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).

Respectfully submitted and signed on this 10th day of March 2025.

Plaintiffs:

_____
April Harry N. Quinones
Email: aharryph@yahoo.com
Mobile: +1-801-875-5607
Address: 18209 SW 3rd St, Pembroke Pines FL, 33029-4302

_____
Janeth R. Quinones
Email: Janeth.reyes@gmail.com
Mobile: +1-801-875-5605
Address: 18209 SW 3rd St, Pembroke Pines FL, 33029-4302